UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WALSH CONSTRUCTION COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 17-cv-11082-LTS |
| DEMTECH, LLC, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 44)

March 3, 2020

SOROKIN, J.

Now before the Court is Defendant Demtech, LLC's ("Demtech's") motion for partial summary judgment. Doc. No. 44. The instant dispute arose out of demolition work performed by Demtech in its capacity as a subcontractor hired by Plaintiff Walsh Construction Company ("Walsh") to demolish a bridge that was owned by the City of Boston. Doc. No. 46 ¶ 2. During the April 2015 explosions carried out by Demtech, several of the City's piers sustained damage. Id. ¶ 13. Walsh, which was contractually obligated to repair any damage caused to the piers pursuant to its own contract with the City, self-performed repair work and now seeks to recover $1,909,564.68 from Demtech. Id. ¶ 16. Demtech now moves for partial summary judgment as to three of Walsh's claims: its quantum meruit claim (Count Two); its negligence claim (Count Three); and its claim brought under Mass. Gen. Laws ch. 93A (Count Seven). Doc. No. 45 at 1.

At the outset, the Court ALLOWS Demtech's motion for summary judgment as to Count Two as "Walsh agrees to the dismissal of its quantum meruit claim." Doc. No. 52 at 7.

As to Walsh's negligence claim, Demtech argues that the claim is barred by Massachusetts courts' adherence to the traditional "economic loss doctrine," which holds "that purely economic losses are unrecoverable in tort . . . actions in the absence of personal injury or property damage." R.L. Whipple Co. v. Pondview Excavation Corp., 887 N.E.2d 1095, 1097 (Mass. App. Ct. 2008) (quoting FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (Mass. 1993)). However, Walsh argues "that economic loss doctrine does not apply to Walsh's negligence claim because Walsh's damages flow from physical loss to a third-party's property ([the] City's Piers), which was in the exclusive possession and control of Walsh." Doc. No. 52 at 7. This exception applies, in Walsh's telling, because Walsh acted as a "bailee [that] is entitled to sue a third party who cause[d] injury to or the loss of the bailed property [that was] in its possession." Priority Finishing Corp. v. LAL Const. Co., 667 N.E.2d 290, 292 (Mass. App. Ct. 1996).

> Walsh's argument fails. Under Massachusetts law, a bailment has been defined as
>
> the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, on the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.

Omni-Wave Elecs. Corp. v. Marshall Indus., 127 F.R.D. 644, 650 (D. Mass. 1989) (quoting 8 Am. Jur. 2d, Bailments § 2 at p. 738 (1980)) (applying Massachusetts law). As Demtech rightly argues, the property at issue in this dispute is real property, not personal property. See Samuel Williston & Richard A. Lord, 19 Williston on Contracts § 53 (4th ed. 1990) ("Although possession of real property may be delivered by the owner to another, the term 'bailment' is not applied to such a transaction."). Moreover, a proper bailment involves the "delivery of goods by their owner to another for a specific purpose, and the acceptance of those goods by the other, with the express or implied promise that the goods will be returned after the purpose of the

2

delivery has been fulfilled." In re Complaint of Martin, 596 F.Supp.2d 142, 161 (D. Mass. 2009). Here, there was no "delivery" of the bridge and piers at issue in the dispute. Thus, a conclusion here that Walsh was a bailee, or that Walsh was sufficiently like a bailee to invoke the relevant exception to the economic loss doctrine, would "extend Massachusetts law beyond what is supported by existing authority." RFF Family P'ship, LP v. Ross, 814 F.3d 520, 535 (1st Cir. 2016); see also Doe v. Trustees of Bos. Coll., 942 F.3d 527, 535 (1st Cir. 2019) ("Federal courts are not free to extend the reach of state law . . . A litigant who chooses federal court over state court cannot expect this court to blaze new and unprecedented jurisprudential trails as to state law.") (internal quotation marks omitted); Braga v. Genlyte Grp., Inc., 420 F.3d 35, 42 (1st Cir. 2005) ("A federal court sitting in diversity must 'take care not to extend state law beyond its well-marked boundaries in an area . . . that is quintessentially the province of state courts.'" (quoting Markham v. Fay, 74 F.3d 1347, 1356 (1st Cir.1996))).

In any event, the undisputed material facts, even drawing all reasonable inferences in Walsh's favor, demonstrate that Walsh did not have sole possession and control of the bridge and piers. As Demtech notes, STV, an engineering firm with its own independent agency relationship with the City, had access to the bridge throughout the demolition project, with STV employees walking the bridge with local government officials on several occasions. Doc. No. 58-4 (demarcating "Department of Public Works, City of Boston" as the "owner" of the "Long Island Bridge"). While it is true that "a bailee properly may delegate to another the performance of the services required with respect to the bailed property," Little, Brown & Co. (Inc.) v. Am. Paper Recycling Corp., 824 F. Supp. 11, 16 (D. Mass. 1993), Walsh did not "delegate" engineering tasks to STV; rather, as Demtech observes, STV carried out its duties "as an agent of . . . the City of Boston." Doc. No. 57 at 2. Such independent access exemplifies the "significant

3

differences between a bailee and a contractor like [Walsh]. While the latter exercises some control, he shares it with others; a bailee, on the other hand, retains exclusive dominion." A. Shapiro Realty Corp. v. Burgess Bros., 491 F.2d 327, 332 (1st Cir. 1974). Without such "exclusive dominion," the relevant exception to the economic loss doctrine is inapplicable.[1] Accordingly, Demtech's motion for summary judgment as to Count Three is ALLOWED.

As to Walsh's Chapter 93A claim, courts have unequivocally held that "unlike a consumer plaintiff under § 9, a plaintiff under § 11 needs to show something more than a mere breach of warranty to adequately plead a Chapter 93A violation." Utica Nat. Ins. Grp. v. BMW of N. Am., LLC, 45 F. Supp. 3d 157, 160 (D. Mass. 2014) (holding that such a plaintiff "must invoke something more than a mere breach of warranty to plead a plausible Chapter 93A, § 11 claim, that is, it must allege a breach of warranty 'plus,' where that "plus" is conduct [that] would render the breach repugnant to the milieu of the commercial marketplace"). As Walsh has not alleged any such "plus" conduct, it cannot maintain a Chapter 93A action against Demtech. Indeed, at the hearing on this motion, counsel for Walsh conceded that Walsh had no viable per se breach of warranty claim under Chapter 93A.

---

[1] Drawing all reasonable inferences in Walsh's favor, the record does not establish exclusive control over the bridge and/or piers, irrespective of whether the piers are characterized as real property, fixtures to real property, or moveable objects resting on real property owned by the City of Boston (that is, the bottom of the harbor). The contract provisions Walsh cites, see Doc. No. 46-2, give Walsh various rights or responsibilities but do not vest it with exclusive legal control over the property, especially as measured against the type of control exercised by a bailee. Nothing in the contract provisions precludes the City or its agents from regular unfettered access to the bridge or piers. In addition, the record does not support the conclusion that Walsh in fact exercised exclusive control over the bridge or piers. As noted above, undisputed evidence establishes a contractor of the City's (not an agent of Walsh) regularly accessed the bridge or piers. Doc. No. 57 at 2. And, nothing in the record establishes or permits a reasonable inference that Walsh asserted exclusive control over the piers—for example, the piers were open and unsecured to small or large craft.

Similarly, Walsh's allegation that "Demtech's attempts to disclaim liability for the damage it caused to the Piers . . . is an unfair and deceptive trade practice" misapplies Massachusetts law. Doc. No. 52 at 17. The Supreme Judicial Court of Massachusetts has "emphasize[d] that Chapter 93A . . . has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation, with the statutory exception as to those 'engaged in the business of insurance.'" Morrison v. Toys "R" Us, Inc., 806 N.E.2d 388, 392 (Mass. 2004); see also Framingham Auto Sales, Inc., v. Workers' Credit Union, 671 N.E.2d 963, 965 (Mass. App. Ct. 1996) ("Mere resistance to a just claim is not the stuff of [Chapter] 93A, except where made such by statute . . ."). Indeed, Massachusetts courts hold that "where the party, in good faith, disputes its obligation to make the payments," the unfair trade practice theory of liability is inapplicable. Zabin v. Picciotto, 896 N.E.2d 937, 963 (Mass. App. Ct. 2008). Walsh contends that Demtech not only breached its contractual obligations but unfairly and deceptively attempted to foist liability off on Genesis or another entity. But, other than the possible existence of a third-party claim by Demtech, nothing in the summary judgment record supports an inference that Demtech's disclaimer of liability was unfair or deceptive. Accordingly, Walsh's two theories of liability under Chapter 93A fail as a matter of law; thus, Demtech's motion for summary judgment as to Count Seven is ALLOWED.

For the foregoing reasons, Demtech's motion for partial summary judgment (Doc. No. 44), is ALLOWED. Trial in this matter will commence on Tuesday September 29, 2020 at 9:00 a.m. and continue day-to-day thereafter. A separate pretrial scheduling order will issue. This case is the only matter on for trial at the designated time.

                                                  SO ORDERED.
                                                  /s/ Leo T. Sorokin
                                                  Leo T. Sorokin
                                                  United States District Judge